### RAILWAYS — NEGLIGENCE — OMISSION OF DUTY.

THE ERIE RAILROAD CO. ET AL v. McCORMICK, ADMINISTRATRIX.

69 Ohio State—Decided, October 13, 1903.

*Omission of Duty—Not Cause of Action, When—Duty of Railway Company in Construction of Bridge—Injury to Employe by Operating Train—Knowledge of Employe—Knowledge of Employe's Peril Imputable to Company—Negligence—Master and Servant.*

1. The omission of a duty is not the foundation of an action unless it results in injury to one for whose protection the duty is imposed.

2. In the absence of a statute requiring it, and of evidence showing that it is usual, a railroad company is not required to construct its bridges so as to permit one to stand upon them in safety while a train is passing; and if such duty were imposed its omission would not be the foundation of an action by an employe who, with full knowledge thereof, acquiesces in the omission.

3. In an action against a railroad company by one who, by his own fault is upon its track and in a place of danger, to recover for a personal injury caused by the failure of its employes operating one of its trains to exercise due care after knowledge of his peril, it is necessary to show actual knowledge imputable to the company. *Railroad Co.* v. *Kassen*, 49 Ohio St., 230, distinguished.

Error to the Circuit Court of Summit County.

Plaintiffs in error are lessee and lessor of a railway running through Akron. The defendant is administratrix of James Thomas McCormick, who, on the twenty-fifth of December, 1897, while acting as track-walker for the lessee company, was struck by one of its trains while upon a bridge in the city of Akron, but near its eastern limit, receiving injuries from which he died in a few days. McCormick had for more than ten years been a track-walker on the portion of road which included the bridge, and he crossed it at least twice daily during that service. On this occasion while on the bridge which, with its approaches is 165 feet in length, ninety-five feet be-

tween abutments, he discovered a train approaching from the east and attempted to escape by the west end of the bridge, had passed the bridge, and had nearly succeeded in escaping from the approach when he was struck by the train; the track and ties were snowy and slippery; the speed of the train was about forty-five miles per hour. About two years later the administratrix began her action to recover for the next of kin of McCormick under the statute which authorizes such recovery in cases where the deceased might have recovered for the injury had it not proved fatal. In her petition she charge1 the company with negligence in the following respects: (1) In so constructing the bridge that one could not stand upon it while the train passed, and in not having planks between the ties. (2) That the speed of the train exceeded that limited by the ordinance of the city of Akron. (3) That no signal was given by the engineer for a public road crossing in the vicinity. (4) That the engineer, after discovering McCormick and the peril of his position, might have averted the injury by giving signals and checking the speed of the train, but willfully and wantonly failed to take any precaution to that end. These averments were all denied by the answer, and the company alleged acquiescence by McCormick with full knowledge of all the conditions complained of, and alleged that the decedent failed to exercise due care for his own safety. Upon the trial the construction of the bridge was shown to be substantially as alleged in the petition; an ordinance of the city of Akron, limiting the speed of trains to six miles an hour, was introduced; and some witnesses who were interested in other matters testified that they heard no signals given for the road crossing, or the bridge. No evidence was produced by the plaintiff upon the original trial to show when the engineer first discovered McCormick's peril, or that he discovered it at all. At the conclusion of the plaintiff's evidence the companies moved the court to direct a verdict in their favor, which motion the court overruled, and they excepted. Defendants introduced testimony to show that track-walkers were required to look out for trains at all times, and that McCormick was at the time alone, governing his own movements without any direction or control whatever from any superior of the company, but exercising his own discretion as to the performance of his duties, under the general rules of the

company. This evidence also tended to show that McCormick, on discovering the approach of the train, might have avoided injury by stepping upon an abutment, or have escaped with but slight injury by jumping from the approach which he had reached before he was struck. The companies also put the engineer and fireman upon the stand, and by the testimony of the former it was shown that he first discovered McCormick when he was too near him to stop the train; that owing to the condition of the windows from snow upon the window of his cab, resulting from snow upon the ground moved by the passing of the train and snow which had but recently fallen, and the smoke of the engine, he could see him but indistinctly, but supposed that he was on the track beyond the bridge; that he, nevertheless, immediately sounded the stock alarm, applied the brakes, and discovering that from the condition of the tracks the brakes were not working well, he applied sand, but, to use his own comprehensive phrase, he exhausted all his resources to stop the train; that it was impossible to stop the train before reaching McCormick's position; that immediately after giving the signal and applying the brakes the boiler and forward portion of the engine interposed between him and McCormick; but that he believed, owing to the slacking of the speed of the train, and McCormick's nearness to a place of safety, he had escaped, and had no knowledge to the contrary until as they were approaching the station in Akron, the fireman came around to his side of the engine and informed him that they had hit the man at the bridge. In its instructions to the jury the court called the attention of the jury to all of the charges of negligence alleged in the petition, directed them to inquire concerning them, and to return a verdict for the plaintiff if any of the charges of negligence were sustained by the evidence, unless they should find the right of action defeated by McCormick's contributory negligence. Upon the subject of the failure to exercise care after the discovery of McCormick's peril the court charged the jury as follows:

"If the decedent in this case was negligent in going upon the track, and I will say bridge here, in the manner and at the time he did, yet if the engineer in charge of the train ought, by the exercise of ordinary care, to have seen the deceased in his perilous position, and could by the exercise of ordinary care have

stopped or checked the speed of the train so as to avoid the collision, and failed to do so, it was negligence for which the company is liable, notwithstanding the negligence of the deceased in going upon the track and bridge.''

The jury returned a verdict for the plaintiff; a motion for a new trial was overruled; and a judgment following the verdict was affirmed by the circuit court.

*Tibbals & Frank,* for plaintiffs in error.

*E. F. Voris* and *A. J. Wilhelm,* for defendant in error.

SHAUCK, J., BURKET, C. J., SPEAR, DAVIS, PRICE and CREW, JJ., concur.

Counsel for the administratrix now insist that the judgment may rest upon the allegation of the petition that the engineer did not use due care to avoid the injury to McCormick after discovering his peril, and the evidence adduced upon that point. By clear implication at least, it is now admitted that the judgment can stand upon no other ground. If that view had been taken by counsel in the preparation of the petition, or by the court upon the trial, questions now before us would have been excluded from the record. But allegations of negligence as to the construction of the bridge, the omission of signals at a neighboring road crossing, and of violation of the ordinance as to the speed of trains, were made in the petition, evidence was introduced to sustain them, and the court directed the jury to consider them as the foundation of their verdict. They appear, therefore, as grounds upon which the verdict and judgment were recovered; and if any one of them was improperly applied in the case the error can not now be cured by admissions in the argument. It seems entirely clear that but for the allegations of the petition relating to a want of care by the engineer after the discovery of McCormick's peril, the petition itself would have been bad upon general demurrer; and all of the other allegations of the petition should have been omitted.

There is no statute requiring the construction of a railroad bridge in any other manner than that in which this bridge was constructed; certainly there is no common knowledge that different methods of construction prevail, nor was there any evidence to that effect. There was, therefore, shown no duty whatever

resting upon the company to construct its bridge otherwise; and if there had been such duty it is entirely clear from the plaintiff's own case that, with full knowledge of the condition acquired through ten years of service, he had acquiesced in that condition, and had thereby waived a right of action in consequence of it (*Krause* v. *Morgan*, 53 Ohio St., 26; *Coal Co.* v. *Estievenard*, 53 Ohio St., 44).

The petition and all the evidence having shown that McCormick was an employe of the company, engaged as a track-walker, there should have been no allegation in the petition as to the omission of signals for the neighboring road crossing, or of the violation of the ordinance regulating the speed of trains, because. by the fact of his relation to the company, it was made to appear that he was not within the classes of persons for whom such signals are required to be given, or for whose protection the speed of trains is regulated. The omission of a duty does not constitute the foundation of an action unless it results in injury to one for whose protection the duty is imposed. This would seem to be elementary, and it is sustained by the decided cases (*Railroad Co.* v. *Depew*, 40 Ohio St., 121; *Railway Co.* v. *Workman*, 66 Ohio St., 509). In view of the admissions of counsel upon the argument, it does not seem necessary to pursue these points at length.

Passing to a consideration of the ground upon which counsel for the administratrix now insist that the recovery might have been sustained, the general inquiry is whether it is in accordance with the law which defines liability for the wanton and willful infliction of injury. The concrete rule upon the subject is, that if one is upon the track of a railway company by his own fault and in peril of which he is unconscious, or from which he can not escape, and these facts and conditions are actually known by the engineer, it is his duty to exercise all reasonable care to avoid the infliction of injury. It does not impose the duty to exercise care to discover that one so upon the track is in a place of danger, but it does impose a duty to be exercised upon actual discovery. No matter if the rule did originate in considerations of humanity, it is an established rule of the law which does not unreasonably interfere with the rapid movements of trains, nor is it ordinarily difficult of application if earnest and impartial efforts are made to apply it according to its terms and obvious import. With re-

spect to the ground of liability now considered, the court instructed the jury that the company would be liable if the engineer ought, by the exercise of ordinary care, to have seen the deceased in his perilous position, and could, by the exercise of ordinary care, have stopped or checked the speed of the train so as to avoid the collision. Notwithstanding the manifest conflict between the instruction given and the rule, it is said that the instruction is authorized by *Railroad Co.* v. *Kassen,* 49 Ohio St., 230. Attention to that case will show that it was decided in accordance with the generally recognized rule, and that its doctrines are not applicable to the present case. In the discharge of its duty to administer justice according to law the court was there called upon to determine the liability of the defendant in view of the very peculiar state of facts which the case presented. This it did by the application of the reason for adjudging that a liability arises in such cases. For the purpose of declaring the law it assumed the existence of all the facts which the evidence tended to establish. The material facts were: The company was running two trains in the same direction about two hours apart; Kassen fell from the rear platform of the forward train to the track, sustaining injuries which disabled him from leaving his position of danger on the track; and while in that position and condition he was run upon and killed by the following train. That he had fallen from the train and was in a place of danger were facts actually known by the employes of the company operating the forward train. There was ample opportunity to rescue him either by stopping the train from which he had fallen, or by using the telegraph to communicate information of his situation to those in charge of the following train. The actual knowledge of the employes of the company in charge of the forward train was its actual knowledge, charging it with the duty of using the opportunities at hand to rescue him from his perilous position. The phrase "ought to have been aware" manifestly applies to those in charge of the following train, and implies the duty of the company to communicate to them its actual knowledge of Kassen's danger. This is entirely clear, not only from the peculiar facts of the case, but from the language of the opinion; for it is said:

"The court properly instructed the jury that the employes operating the train which ran over Kassen were without fault.

They had no notice that he was on the track, and were not re-
quired to anticipate his presence there.   Until they discovered
him they were justified in running the train as if the track was
clear; and it is not claimed that after his discovery they omitted
any precaution for his safety.   If those employes had received
notice of Kassen's situation in time to have avoided the injury,
it is clear that it would have been their duty to exercise due care
in the management of the train to do so, notwithstanding he was
there through his own fault, which was known to them; and for
their omission to use such care the defendant would be liable.
While they were ignorant of the situation, the defendant was
not.''

It is entirely clear, therefore, that the liability of the company
was placed upon the sole ground that after receiving actual no-
tice that Kassen was upon the track and in a position of peril, it
failed to use the means at hand to avoid injury to him.   The
doctrine of the case can have no application when neither the
company nor its employes operating the train by which the in-
jury is inflicted may be charged with actual knowledge.   The
rule of liability applies only when there is actual knowledge of
those operating the train inflicting the injury, which knowledge
is imputed to the company, or the actual knowledge of the com-
pany derived through other means, with opportunity to com-
municate it to those operating the train.   By introducing into the
instruction given the phrase, ''if the engineer in charge of the
train ought, by the exercise of ordinary care, to have seen the de-
ceased in his perilous position,'' and by other expressions in the
charge involving the same conception, the court gave to the jury
an erroneous view of the law.

The motion of the companies to direct a verdict at the conclu-
sion of the testimony offered by the plaintiff should have been
sustained; for it is quite clear, from the foregoing considera-
tions, that the evidence offered in support of the immaterial aver-
ments of the petition did not entitle the plaintiff to a verdict, and
upon the only ground alleged in her petition upon which she
might recover there is an entire absence of evidence, to-wit, the
actual knowledge of the engineer of McCormick's peril.   The
companies did not stand upon that motion, but introduced the
evidence of the engineer which, for the first time, showed that
he had discovered McCormick before the collision; and from his

evidence it also appears that he did all that was in his power to avoid the infliction of injury.

With respect to the conduct of the trial, it seems sufficient to say that court and counsel appear to have been alike unmindful of the doctrine of *Hayes* v. *Smith,* 62 Ohio St., 161. Counsel have, at some length, discussed the constitutional validity of Section 3365-22 of the statutes of this state; but in the view of the case which we have taken we do not consider that question material and we do not determine it.

*Judgments of the circuit court and the court of common pleas reversed.*